Orphans' Court.   New Castle.   August 25, 1817.

*Ridgely's Notebook I, 148.*

ROBERT McMURPHY v. ALRICH RYLAND.

Orphans' Court.   New Castle.   August 25, 1817.

*Ridgely's Notebook I, 148.*[1]

[1] Ridgely in paging the manuscript has repeated pp. 148–149.

THE CHANCELLOR. The three first exceptions to this general account are: first, that the guardian has not accounted for the full value of the rents of the mill and farm, as much greater annual rents could have been obtained for them; second, that the guardian occupied the mill from March, 1802, to March, 1808, and that during that period the rents and profits of the mill exceeded $106.67, the appraised value; and third, that the guardian has expended large sums in the repairs of the mill and yet allows no additional rents. These exceptions I have disallowed because the repairs were necessary to the interest of the minor, and because it appears by the testimony that even after the repairs were made the rents were not worth more than $106.67 *per annum*. It was the want of a road to the mill which depressed its value, and although after the new road was obtained the value was increased, yet for a portion of the time before the repairs were made, and during the period of repairing, it rendered no profit to the guardian. This lost time has not been deducted, and altogether the charges are as correct as could probably be ascertained.

So much of the fourth exception is allowed as the want of vouchers will not support the charges which the guardian has made.

As to the special account, I have deducted charges against the ward to the amount of $397.49½. These charges accrued for the maintenance of the ward and for money advanced to him. When Ryland became guardian, the ward was about fourteen years old, healthy and capable of obtaining his maintenance, had he been employed. Instead of that, with an income averaging about $54.49, and that liable to repairs to nearly its whole amount, the guardian was allowed $56.78 a year towards maintenance when the ward should have been learning some business which would have supported him during the time, and which would have qualified him for future usefulness.

Guardians should be allowed for repairs necessary to the interest of the ward. Some repairs may be called necessary, which are injurious. As, suppose a mill seat with an old ruinous mill. To rebuild or repair such a mill may be destructive to the ward, although it may be necessary to the particular property. The true principle is this, that whatever repairs or expenses will benefit or improve the ward's estate may properly be allowed to

the guardian; and such as are detrimental should not be allowed, although the particular property may be improved.

As to maintenance and education, the income of the ward must not be exceeded. This is the general rule. See 3 P.Wms. 365, 3 Atk. 430, 2 Bro.C.C. 231, 3 Ves.Jr. 10. But there may be exceptions. *Vide* Prec.Ch. 559, where an extraordinary allowance was made on account of a fit of sickness. Although such be the general rule, if there be no necessity that the income be expended, or its expenditure be not beneficial to the ward, it ought not to be allowed. As suppose a young man with a small income, hearty and capable, who ought to learn some mechanical trade or should be employed in agriculture; there his services will so much exceed his maintenance and education that no allowance should be made therefor. Even where the ward is designed for a learned profession, a guardian cannot exceed his income.